J-A14035-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SCOTT F. LINDE, INDIVIDUALLY AND AS TRUSTEE OF THE SCOTT F. LINDE FAMILY S CORPORATION TRUST | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : | |
| v. | : : : | |
| | : | No. 2212 EDA 2022 |
| LINDE ENTERPRISES, INC., A PENNSYLVANIA CORPORATION, AND ERIC LINDE | : : : : | |

Appeal from the Judgment Entered October 5, 2022
In the Court of Common Pleas of Wayne County
Civil Division at No(s):  348 - Civil - 2019

BEFORE:  PANELLA, P.J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED NOVEMBER 09, 2023**

Scott F. Linde ("Scott"), individually and as trustee of the Scott F. Linde Family S Corporation Trust ("the Scott Trust") appeals from the judgment entered in favor of Linde Enterprises Inc. ("LEI") and Eric Linde ("Eric") following the entry of nonsuit.  We affirm in part, vacate the judgment, vacate the order denying post-trial relief, and remand for further proceedings.

Scott and Eric are brothers.  At issue in this litigation is LEI, a construction company started by their father.  Initially, Scott and Eric each owned 300 shares of stock in LEI.  Their sister Barbara, who is not involved in this lawsuit, owned approximately 100 shares.  Scott placed his shares into the Scott Trust, and for reasons not apparent in the record, the Scott Trust

had one share of LEI stock at the inception of this litigation.[1]  Barbara placed her shares into her own trust.  Scott was a director for LEI, but was removed from that position due to alleged wrongdoings.  Eric, as the majority shareholder, controlled the board of directors, and eventually served as president of LEI from 2012 to 2020.

Since 1999, the siblings have been involved in multiple lawsuits against each other, including a 1999 shareholder derivative action filed by Eric against Scott and Barbara for allegedly starting their own company and funneling assets of LEI into their company.  A trial in that action was scheduled to commence in 2014; however, on the eve of trial, Eric and Scott reached a settlement agreement ("Agreement").  The Agreement provided, in part, that, in exchange for Eric's 300 shares of stock in LEI and Eric's stock in another corporation, Scott would pay Eric $2,000,000,[2] and would transfer his interests in certain other entities and land to Eric.  Essentially, the Agreement would divest Eric of his interest in and control of LEI, and transfer control of LEI to Scott upon his payment of $2,000,000 and transfer of specified interests to Eric.  Pursuant to the LEI Shareholders Agreement, Eric provided notice to LEI of his intent to sell his LEI stock.  After LEI declined to purchase any of Eric's shares, Eric provided notice to the remaining shareholders (*i.e.*, Scott

---

[1] Scott is the settlor, sole trustee, and sole beneficiary of the Scott Trust.

[2] The Agreement provided that Scott would make an initial payment of $1,000,000, and five installment payments of $200,000.

and Barbara) of his intent to sell his shares. Barbara declined to purchase any of Eric's shares. Based on his rights as a minority shareholder, Scott attempted to purchase 212 of Eric's shares of LEI stock through the terms of the Stock Purchase Agreement, which would have permitted Scott to acquire a majority of Eric's shares for an amount considerably less than the amount specified in the Agreement. However, when Scott notified LEI of his intent to purchase some of Eric's stock pursuant to the Stock Purchase Agreement, Eric advised Scott that he was legally obligated to purchase all of Eric's shares pursuant to the terms of the Agreement, and that his initial payment of $1,000,000 was due. Scott did not make any settlement payments to Eric or transfer his interests per the terms of the Agreement. Instead, Scott initiated a lawsuit against Eric seeking to compel him to deliver 212 shares of his stock pursuant to the Stock Purchase Agreement.

In 2016, Eric commenced a lawsuit against Scott asserting a claim for breach of contract and seeking specific performance of the Agreement ("the enforcement action"). Scott counterclaimed that Eric breached the Agreement by not complying with the notice requirements of the Stock Purchase Agreement. The enforcement action proceeded to a non-jury trial at the conclusion of which the court determined, *inter alia*, that: Scott breached the Agreement in October 2014; Scott never intended to purchase Eric's stock in LEI as per the terms of the Agreement; Scott's deceptive conduct was a pretext to avoid Eric's 1999 derivative action; and Eric did not breach the

Agreement. The trial court additionally found that Scott was delinquent in making payments due under the Agreement and ordered Scott to immediately pay $1,400,000 before a final settlement could take place per the terms of the Agreement. The court thereafter entered judgment in Eric's favor, and Scott appealed. This Court affirmed the judgment and our Supreme Court denied allowance of appeal. *See Linde v. Linde*, 210 A.3d 1083 (Pa. Super. 2019); *appeal denied*, 224 A.3d 1091 (Pa. 2020).

In 2019, Scott filed the present action asserting a claim for unjust enrichment against Eric and LEI, and claims for breach of fiduciary duty, fraud, and conversion solely against Eric. Although Scott did not assert a claim for breach of contract, he repeatedly averred in the complaint that Eric breached the terms of the Agreement.[3] Scott claimed that Eric violated the business standstill clause in the Agreement, which purportedly would have required the shareholders and directors of LEI (including Eric) to refrain from taking any action relating to the company until the settlement was completed and Eric's shares of LEI stock had been transferred to Scott. Scott asserted that Eric further breached the Agreement by devaluing LEI by more than $1,000,000 through misappropriating LEI funds and assets, paying legal fees for which

_____

[3] The omission of any breach of contract claim against Eric in this matter may be due to the judicial determination in the enforcement action that Eric did not breach the Agreement, and the additional judicial determination that Scott breached the Agreement in October 2014, which breach would have presumably relieved Eric of his further obligations under the Agreement. *See Linde*, 210 A.3d at 1088.

- 4 -

LEI was not responsible, illegally transferring LEI properties for nominal consideration, and improperly invoicing LEI for unnecessary expenses.

The matter proceeded to a bifurcated non-jury trial which took place over three days in August 2021, April 2022, and June 2022. On the third day of trial, Scott moved to amend the complaint to conform the pleading to the evidence presented at trial. Eric and LEI consented to the amendment. After Scott rested his case, Eric moved for compulsory nonsuit on the basis that, *inter alia*, Scott was an improper party to the action since his claims were derivative in nature and he was not asserting the claims as a shareholder on behalf of LEI but was merely asserting the claims in his individual/trustee capacity.[4] The trial court took the matter under advisement and permitted the parties to file briefs on the motion to amend and the motion for compulsory nonsuit. Ultimately, the court granted Scott's motion to amend the complaint, but nevertheless granted Eric's motion for compulsory nonsuit on the basis that Scott, in his individual/trustee capacity, was not a proper party to file the action. Scott then filed a post-trial motion to remove the entry of nonsuit,

---

[4] Eric additionally moved for nonsuit on the basis of *res judicata*, collateral estoppel, statute of limitations, and the insufficiency of evidence to support the claims.

which the trial court denied. Scott filed a timely notice of appeal.[5] Both Scott

and the trial court complied with Pa.R.A.P. 1925.

Scott raises the following issues for our review:

1. Did the lower court make a determination that was not supported by the evidence and the applicable law, commit an abuse of discretion, and/or commit an error of law by entering a nonsuit in favor of [Eric and LEI] and against Scott and in refusing to remove the nonsuit because Scott provided sufficient evidence establishing a direct claim, as opposed to a derivative claim, to recover against Eric and LEI and because Scott is a proper party to assert such direct claims?

2. Did the lower court make a determination that was not supported by the evidence and the applicable law, commit an abuse of discretion, and/or commit an error of law by entering a nonsuit in favor of LEI and Eric and against Scott and in refusing to remove the nonsuit without conducting a hearing or oral argument on Scott's post-trial motion?

_____

[5] Scott purported to appeal from the trial court's order denying his motion to remove the nonsuit. However, in a case where nonsuit is entered, the appeal properly lies from the judgment entered after denial of a motion to remove nonsuit because orders denying post-trial motions are interlocutory and non-appealable until the entry of a final judgment. *See Prime Medica Assocs. v. Valley Forge Ins. Co*., 970 A.2d 1149, 1154 n.6 (Pa. Super. 2009) (explaining that an order denying post-trial motions is interlocutory and not appealable until entry of final judgment). Accordingly, this Court directed Scott to praecipe the trial court to enter judgment upon the nonsuit. Scott complied with that directive, and judgment was entered on October 5, 2022, thereby perfecting our appellate jurisdiction. *See* Pa.R.A.P. 905(a)(5) (providing that "[a] notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof"); *see also Johnston the Florist, Inc. v. TEDCO Const. Corp.*, 657 A.2d 511, 513 (Pa. Super. 1995) (*en banc*) (holding that this Court's appellate jurisdiction is perfected where appellant prematurely appealed from an order denying post-trial relief and judgment was later entered).

3. Did the lower court make a determination that was not supported by the evidence and the applicable law, commit an abuse of discretion, and/or commit an error of law by entering a nonsuit in favor of LEI and Eric and against Scott and in refusing to remove the nonsuit without providing Scott the opportunity to amend the pleadings to assert shareholder derivative claims consistent with the holding in **Hill v. Ofalt**, 85 A.3d 540 (Pa. Super. 2014)?

Scott's Brief at 5-6 (unnecessary capitalization omitted, issues reordered for ease of disposition).

In his first issue, Scott challenges the entry of nonsuit. Pennsylvania Rule of Civil Procedure 230.1 permits a trial court to enter a compulsory nonsuit on any and all causes of action if, at the close of the plaintiff's case against all defendants on liability, the court finds that the plaintiff has failed to establish a right to relief. **See** Pa.R.Civ.P. 230.1(c); **see also Scampone v. Highland Park Care Ctr., LLC**, 57 A.3d 582, 595 (Pa. 2012).

Our standard of review of an order granting nonsuit is as follows:

In reviewing the entry of a nonsuit, our standard of review is well-established: we reverse only if, after giving appellant the benefit of all reasonable inferences of fact, we find that the factfinder could not reasonably conclude that the essential elements of the cause of action were established. Indeed, when a nonsuit is entered, the lack of evidence to sustain the action must be so clear that it admits no room for fair and reasonable disagreement. The fact-finder, however, cannot be permitted to reach a decision on the basis of speculation or conjecture.

\* \* \* \*

On appeal, entry of a compulsory nonsuit is affirmed only if no liability exists based on the relevant facts and circumstances, with appellant receiving the benefit of every reasonable inference and resolving all evidentiary conflicts in [appellant's] favor. The compulsory nonsuit is otherwise properly removed and the matter

> remanded for a new trial. . . . The appellate court must review the evidence to determine whether the trial court abused its discretion or made an error of law.

***Munoz v. Children's Hosp. of Philadelphia***, 265 A.3d 801, 805-06 (Pa. Super. 2021)

Under established Pennsylvania law, a shareholder does not have standing to institute a direct suit for a harm that is peculiar to the corporation and that is only indirectly injurious to the shareholder. ***See Hill***, 85 A.3d at 548. Rather, such a claim belongs to, and is regarded as an asset of, the corporation. ***Id***. Whether a cause of action is individual or derivative must be determined from the nature of the wrong alleged and the relief, if any, that could result if the plaintiff were to prevail. ***Id***. at 549. In determining the nature of the wrong alleged, the court must look to the body of the complaint, not to the plaintiff's designation or stated intention. ***Id***. The action is derivative if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent dissipation of its assets. ***Id***. If damages to a shareholder result indirectly, as the result of an injury to the corporation, and not directly, the shareholder cannot sue as an individual. ***Id***. In such cases, "only the corporation and a shareholder . . . by an action in the right of the corporation may bring a lawsuit and claim that a director breached the standard of care

owed to the corporation." *Id*. at 548 (citation and internal quotations omitted).

Scott challenges the entry of nonsuit on the basis that he provided sufficient evidence at trial establishing a direct right to recover against LEI and Eric. Scott argues that, pursuant to the standstill clause in the Agreement, LEI's overall financial condition should have been maintained and preserved until he formally assumed control of the corporation. Scott's Brief at 43-44. Scott insists that the gravamen of his action is Eric's breach of the Agreement by depleting LEI's corporate funds and assets, and effectively bankrupting LEI prior to the transfer of Eric's stock in LEI to Scott. *Id*. at 42. Specifically, Scott contends that Eric misappropriated LEI funds and assets, paid legal fees for which LEI was not responsible, illegally transferred LEI properties for nominal consideration, and improperly invoiced LEI for unnecessary expenses. *Id*. at 43-46. Scott contends that the Agreement created a special relationship that would allow him to recover on the claims asserted in the complaint notwithstanding the derivative nature of those claims. *Id*. at 41. Scott points out that LEI was not a party to the Agreement, which explicitly grants him, and not LEI, the right to seek damages against Eric. *Id*. Scott asserts that the present matter involves claims for losses that he personally sustained because of Eric's breaches of the Agreement. *Id*. Scott contends that, because he provided sufficient evidence to the trial court to establish a *prima facie* case for unjust enrichment against LEI and Eric, as

well as breach of fiduciary duty, fraud, and conversion against Eric, the entry

of nonsuit was inappropriate.

The trial court considered Scott's first issue and determined that it

lacked merit. The court reasoned:

> Here, [Scott] failed to set forth any evidence of a direct injury to [himself]. [Only count one, unjust enrichment, is directed at . . . LEI. While count one is labeled as an unjust enrichment claim against Eric and LEI, Scott failed to set forth any evidence of LEI being unjustly enriched, and in fact, Scott alleged that LEI has been diminished by the actions of Eric.] The alleged conduct of . . . Eric . . . is as follows: he unjustly deprived [Scott] of the profit from "[his] interest in LEI;" sold property of LEI and failed to distribute the *pro rata* proceeds; sold property of LEI to himself or entities he controlled below value; used LEI funds to make payments for non-LEI expenses; diminished the net worth, or book value, of LEI through misapplication, wasting, pilfering and diversion of LEI's assets; and, breached his fiduciary duties to [Scott] as minority shareholder[]. The complained[-]of actions do not constitute a cognizable, individual claim for unjust enrichment, breach of fiduciary duty, fraud, or conversion.

> Further, [Scott's] legal argument that the injur[ies] to [him] are distinct from any harm to LEI belies the evidence presented. The testimony of . . . Scott . . . established that [his] chief complaint is the failure to receive the benefit of the bargain in the . . . Agreement . . .; accordingly, [Scott's] injury is not a direct injury. (**See** N.T.[,] 8/30/[]21, [at] 80-81). [Scott] testified "I filed the complaint to be able to receive the [*sic*], what was contracted for and also to protect the asset that I agreed to purchase which was the stock of [LEI]." **Id**. at 6. [Scott's] allegations are clearly regarding the alleged devaluation of the worth of LEI; this is a claim that would, if proven, establish an injury to all shareholders of LEI, not only [Scott].

> The evidence is clear that [Scott] complain[s] of harm to . . . LEI; thus, [he is] the improper party to file this action and the court must grant a compulsory non[]suit.

Trial Court Opinion, 7/19/22, at unnumbered 2-3 (footnote and unnecessary capitalization omitted, content of omitted footnote incorporated in brackets); *see also* Trial Court Opinion, 10/18/22, at 2 (concluding that "Scott[,] . . .in his capacity as minority shareholder of LEI[,] would have been the proper party to bring the suit").

We discern no abuse of discretion or error of law by the trial court in entering nonsuit in favor of Eric and LEI. The gravamen of Scott's claims, as set forth in the complaint and adduced at trial, was that Eric, in his capacity as majority shareholder and president of LEI, devalued LEI in anticipation of his transfer of LEI stock to Scott pursuant to the terms of the Agreement. Stated differently, Scott alleged that Eric, while acting as president of LEI, caused harm to LEI by devaluing LEI and enriching himself in the process. As such, Scott asserted direct harm to LEI, and only indirect harm to himself by virtue of the Agreement. Because the right to assert a cause of action for the injury to LEI is considered an asset of LEI, this right could only be asserted in an action commenced directly by LEI, or by a shareholder of LEI in a shareholder derivative action commenced on behalf of LEI. *See Hill*, 85 A.3d at 548.

In the instant matter, Scott did not assert any claim in his capacity as a shareholder of LEI, nor did he assert a shareholder derivative claim on behalf of LEI. Thus, after giving Scott the benefit of all reasonable inferences of fact, we conclude that the trial court did not err or abuse its discretion in entering

compulsory nonsuit because Scott, as an individual and as trustee of the Scott Trust, could not assert a claim on behalf of LEI. **See Munoz**, 265 A.3d at 805-06. Accordingly, Scott's first issue merits no relief.

In his second issue, Scott claims the trial court abused its discretion by denying his post-trial motion to remove the nonsuit without conducting a hearing. Pennsylvania Rule of Civil Procedure 227.1 specifies the types of post-trial relief that a trial court may award upon written motion, and the procedures related thereto. **See** Pa.R.Civ.P. 227.1. Notably, Rule 227.1 does not require that a trial court presented with a post-trial motion conduct a hearing. **See id**.

Scott asserts that, due to the absence of a hearing to further develop the record on the issues raised within the post-trial motion, he was denied a complete opportunity to be heard. Scott acknowledges that the opportunity to be heard does not always require a hearing but nevertheless argues that he was denied an opportunity to be heard.

The trial court considered Scott's second issue and determined that it lacked merit. The court reasoned that it was not required to hold a hearing prior to ruling on the post-trial motion. **See** Trial Court Opinion, 10/18/22, at 4.

We discern no abuse of discretion by the trial court in declining to hold a hearing on the post-trial motion. Scott concedes that he was not entitled to a hearing. Scott's Brief at 58. Instead, he simply argues that, given the

nature of the proceedings, he should have had the opportunity for oral argument. However, as explained above, the trial court was not required to grant Scott's request. Therefore, no relief is due.

In his final issue, Scott contends that, assuming his claims are derivative in nature, the trial court erred in refusing to remove the nonsuit to permit him the opportunity to amend the amended complaint to assert a shareholder derivative claim. Pursuant to Pa.R.Civ.P. 1033(a), a party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. **See** Pa.R.Civ.P. 1033(a). Leave to amend pleadings has traditionally been liberally granted in this Commonwealth. **See Biglan v. Biglan**, 479 A.2d 1021, 1025 (Pa. Super. 1984). Rule 1033 imposes no limit on the time when an amendment may be made. Thus, pleadings may be amended at the discretion of the trial court after pleadings are closed, while a motion for judgment on the pleadings is pending, at trial, after judgment, or after an award has been made and an appeal taken therefrom. **See id.** at 1025-26. Indeed, the denial of a petition to amend, based on nothing more than unreasonable delay, is an abuse of discretion. **See Capobianchi v. BIC Corp.**, 666 A.2d 344, 347 (Pa. Super. 1995) (citation omitted). However, timeliness is a factor to be considered "insofar as it presents a question of prejudice to the opposing party." **Id**.

The right to amend lies within the discretion of the trial court and should be granted liberally unless there is an error of law or prejudice to the adverse party. *See Hill*. 85 A.3d at 557. To permit a plaintiff to change its claim at the very end of the case may be unjust. *See West Penn Power Co. v. Bethlehem Steel Corp.*, 348 A.2d 144, 156 (Pa. Super. 1975) (declining to permit amendment after entry of compulsory nonsuit, noting that a motion to amend is properly denied when the moving party would gain an inequitable advantage). Further, amendments may not be made if they introduce a new cause of action after the statute of limitations has run. *See John Goffredo & Sons, Inc. v. S. M. G. Corp.*, 446 A.2d 255, 256 (Pa. Super. 1982). Finally, where allowance of an amendment would be a futile exercise, the amendment should not be allowed. *See Carlino v. Whitpain Inv'rs*, 453 A.2d 1385, 1388 (Pa. 1982).[6]

Scott concedes that, when he filed his motion to amend the complaint before the entry of nonsuit, he did not seek to add a new party (*i.e.*, Scott in his capacity as minority shareholder) or state a derivative shareholder claim

---

[6] Eric contends that the requested amendment would be futile, as Scott has since caused LEI to file a lawsuit against Eric in Wayne County "asserting essentially the same claims on the same factual basis . . .." Eric's Brief at 25 n.6; *see also id*. at Appendix 1 (consisting of a copy of the complaint purportedly filed by LEI against Eric asserting, *inter alia*, claims for breach of fiduciary duty, unjust enrichment, and conversion, and alleging, *inter alia*, that Eric purposefully misrepresented and depleted LEI's assets from 2014 to 2020, by misappropriating funds and assets to pay his personal expenses and to transfer LEI's assets and real estate to Eric's business-related entities).

on behalf of LEI. However, he maintains that he requested an opportunity to amend the amended complaint in his post-trial motion seeking removal of the nonsuit. Scott argues that the trial court should have removed the nonsuit and provided him with an opportunity to amend the amended complaint so that he could assert a shareholder derivative claim on behalf of LEI. Scott contends that the trial court was bound to liberally permit a second amendment. Scott claims that amending the amended complaint would not add a new party because he would stand in the shoes of a shareholder subject to the same claims. Furthermore, Scott asserts that no surprise or prejudice to Eric or LEI would result from a second amendment.

The trial court considered Scott's third issue and reasoned:

> Here, [Scott] filed a motion to amend [the] complaint on June 13, 2022 during the pendency of trial and at the close of [his] case. In that motion, [Scott] sought only to clarify material facts regarding [his] claims of evidence and did not seek to add or remove parties or to assert any new causes of action. The amended complaint neither added Scott Linde, minority shareholder of LEI, as a plaintiff nor did it assert shareholder derivative claims. [Eric and LEI] consented to [Scott's] motion to amend. This court acknowledged [Scott's] amended complaint in its July 19, 2022 opinion and order. [**Scott**] **did not file any subsequent motions to amend**.

Trial Court Opinion, 10/18/22, at 3 (unnecessary capitalization omitted, emphasis added).

Our review of the record discloses that Scott filed a post-trial motion styled as a "Post-Trial Motion to Remove Compulsory Nonsuit and to Order that Trial is to Proceed on all Issues." **See** Post-Trial Motion, 7/28/22, at 1.

- 15 -

Patently, the title of the motion gave no indication to the trial court that, within the body of the motion, Scott included a request to amend the amended complaint to assert a claim in his capacity as a minority shareholder of LEI and to add a shareholder derivative claim on behalf of LEI. Nevertheless, such a request was included in the motion. *See id*. at ¶¶ 27-41.

As it appears that the trial court did not apprehend that Scott included a request to amend the amended complaint in his post-trial motion, we vacate the judgment and order denying post-trial relief and remand for the trial court to address the request to amend the amended complaint and determine whether such request should be granted or denied, bearing in mind the well-established considerations bearing upon that determination as explained above.

Affirmed in part, judgment vacated, order denying post-trial relief vacated, case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/9/2023